UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VICTORIA GABRIELA RODRIGUEZ-MORALES,<br>Defendant. | MAG. NO. 23-1259(M) |

## MOTION REGARDING PRETRIAL DETENTION

The United States respectfully ☒ DOES / ☐ DOES NOT move for pretrial detention pursuant to 18 U.S.C. § 3142.

The United States respectfully ☒ DOES / ☐ DOES NOT move for a continuance of three days for the hearing on pretrial detention pursuant to 18 U.S.C. § 3142(f).

A statutory, rebuttable presumption in favor of detention ☐ DOES / ☒ DOES NOT apply pursuant to 18 U.S.C. § 3142(e).

**I.  Basis for Detention** (*if requested*)

    a. The United States requests detention pending trial under 18 U.S.C. § 3142(e) because there is no combination of conditions that will reasonably assure the following:
        i. ☒ Defendant's appearance, based on a preponderance of the evidence,[1] and/or
        ii. ☒ Safety of any other person and the community, based on clear and convincing evidence.[2] [18 U.S.C. § 3142(f)]

    b. The following factors under 18 U.S.C. § 3142(g) favor detention:
        i. ☒ the nature and circumstances of the offense charged [18 U.S.C. § 3142(g)(1)],

---

[1] *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991).
[2] The "Court may consider uncharged conduct in assessing the degree of danger posed by the defendant." *United States v. Rivera-Sepúlveda,* Criminal No. 19-695, 2020 WL 402277, at *2 (D.P.R. 2020). "[D]anger to the community does not refer only to the risk of physical violence." *Patriarca*, 948 F.2d at 792 n.2. The Court should consider any evidence of dangerousness, even if unrelated to the pending charges. *United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir. 1991).

ii. ☒ the weight of the evidence against the defendant [18 U.S.C. § 3142(g)(2)],
iii. ☒ the history and characteristics of the person [18 U.S.C. § 3142(g)(3)], and/or
iv. ☒ the nature and seriousness of the danger to any person or the community that would be posed by the person's release [18 U.S.C. § 3142(g)(4)]

II. **<u>Detention Hearing</u>** (*if requested*)

A detention hearing is warranted because the case involves the following:

a. ☐ Firearm, destructive device or any other dangerous weapon [18 U.S.C. § 3142(f)(1)(E)],
b. ☒ Crime of violence [18 U.S.C. § 3142(f)(1)(A)],
c. ☐ Offense with a maximum sentence of life imprisonment or death [18 U.S.C. § 3142(f)(1)(B)],
d. ☐ Controlled-substance offense with a maximum sentence of imprisonment of 10 years or more [18 U.S.C. § 3142(f)(1)(C)],
e. ☐ Any felony, provided that the defendant has two prior convictions for any of the following: (i) a crime of violence, (ii) a controlled-substance offense with a maximum sentence of imprisonment of 10 years or more, or (iii) an offense with a maximum sentence of life in prison or death [18 U.S.C. § 3142(f)(1)(D)],
f. ☐ Minor victim or a failure to register as a sex offender under 18 U.S.C. § 2250 [18 U.S.C. § 3142(f)(1)(E)],
g. ☐ Serious risk of flight [18 U.S.C. § 3142(f)(2)(A)], and/or
h. ☐ Serious risk of obstructing justice or intimidating a witness/juror [18 U.S.C. § 3142(f)(2)(B)]

The United States respectfully reserves its right to amend the selections listed above, and nothing in this filing shall constitute a waiver of any argument related to detention.

III. **<u>The offenses charged are crimes of violence</u>**

Defendant is charged with multiple violations of 18 U.S.C. § 875(c). While the charges detailed on the complaint cover the period from April to October, 2023, Defendant has been under investigation for the same type of offenses since 2020. Prior to that, in 2018, she engaged in similar conduct while residing in Texas.

As used in section 3142, the term "crime of violence" means—

(A) an offense that has as an element of the offense the use, attempted use, or **threatened use of physical force against the person or property of another**;
(B) any other offense that is a felony and that, by its nature, **involves a substantial risk that physical force against the person or property of another may be used** in the course of committing the offense; or
(C) any felony under chapter 77, 109A, 110, or 117.

18 U.S.C. § 3156(a)(4) (emphasis added). The analysis of a sister court from the First Circuit is instructive. In *United States v. Santoro*, 359 F. Supp. 3d 122 (D. Me. 2019), the Court determined that an offense, as enumerated under 18 U.S.C. § 875(c), is a crime of violence. The very threat to injure another, it reasoned, is a threatened use of violent force. The court noted the challenge of explaining "how one can threaten to injure the person of another without such a threat implying the use of violent force to do so." *Santoro*, 359 F.Supp. 3d at 128 (detaining defendant pending sentencing); citing *United States v. Chapman*, 866 F.3d 129, 134-35 (3rd Cir. 2017) (where a mailed threat to injure someone under section 876(c) amounted to a crime of violence). Similarly, in *United States v. Christy*, No. 3:18-CR-223, 2020 WL 2794617, at *4 (M.D. Pa. May 29, 2020), the Court held that the communication of threats, including to the President, "are clearly crimes of violence under the Bail Reform Act." *See* 18 U.S.C. 3156(a)(4). As a result, the Court ruled that defendant "failed to establish by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released, and he has failed to establish exceptional reasons why his continued detention until sentencing is not appropriate." *Id*. at *6.

In *United States v. Choudhry*, 941 F. Supp. 2d 347, 351 (E.D.N.Y. 2013), the Court likewise held that the communication of threats to injure another were a crime of violence for detention purposes. The defendant in *Choudhry* (who lived in Brooklyn) was alleged to have

made oral statements evidencing his "unrelenting intention to kill" various individuals in Pakistan. *Id*. at 352. Some of those people were later murdered, though defendant denied any involvement and there was no evidence that defendant had traveled to Pakistan during the relevant time frame. The Court noted that "Not only is Defendant recorded communicating threats in interstate commerce, he is recorded avowing his relentless determination to see them through." *Id*. at 357-58. The Court explained that "[e]xploration of whether this Defendant is capable of executing this threat—or indeed has already in fact begun to execute it—is one expedition this Court will not condone." *Id*. The Court further rejected conditions of release because "even if this Court were to impose home detention and electronic monitoring, and limit Defendant's visitors to immediate family, there is no way that this Court could guarantee that Defendant would not direct family members to continue to carry out his threats to kill all of the members of Ms. Ajmal's cousin's family. Under these circumstances, the Court concludes that home detention, electronic surveillance, and related conditions would not adequately shield the community from the threat posed by Defendant." *Id*. Likewise, in this case, defendant has repeatedly directed threats to another jurisdiction and claims to have individuals willing to act on her behalf.

More recently, in *United States v. Capriotti*, case no. 21-cr-16, 2021 WL 229660 (N.D. Ill January 22, 2021) the Court indicated it had "no trouble" reaching the same conclusion and collected cases so holding. "This Court agrees and finds it impossible to imagine proof of a violation of Section 875(c) without a threat of the use of physical force against a person, given that the statute minimally includes a threat to injure another person." *Id.* at *4. The Court in *Capriotti* ordered detention primarily because o the "nature and circumstances of the offense," "which, as charged, involved repeated, explicit threats to inflict injury and even death on several members of

the U.S. Congress and upon President Joseph R. Biden Jr. and Vice President Kamala D. Harris." *Id*. at *4. "[T]he Complaint alleged that even after being warned to stop, Defendant 'periodically' continued to leave anonymous, threatening messages with members of Congress after February 2020 and into November and early December 2020." *Id*. at *1.

### IV. Defendant is a Danger to the Community

"Threats, particularly those as explicit, graphic, and repeated as those alleged in this case, harm people. They terrorize people. They affect the safety, security and well-being of people. They induce fear. The Court's conclusion in this respect is not new at all, but the grounds for it bear repeating during these turbulent times…. Moreover, true threats necessarily contribute to a climate of violence that the community, along with the nation at large, has an important, ongoing interest in reducing." *Capriotti*, 2021 WL 229660, at *5.

Since 2018, Defendant has engaged in a pattern of threats directed at institutions (including a children's hospital and schools) in Texas and at law enforcement involved in the investigation of her repeated threats. At least one of her threats resulted in the temporary closing of a school in Texas, disrupting the lives of teachers, students and parents. Nothing good can come of Defendant's threats. If law enforcement immediately acts upon them, schools and hospitals can be locked down. If law enforcement is skeptical of such threats of violent, that may lead to false negatives, resulting in tragedy.

Defendant's threats have continued even though the FBI and Secret Service have spoken with her family in an effort to stop these threats. These criminal charges are a last resort of the Government in a years-long effort to deter Defendant's terrorizing of Uvalde residents. The Government has sought other means, short of criminal charges, including repeatedly alerting the

family to the repeated threats by Defendant and making them aware of resources that could assist Defendant. But these did not stop Defendant's threats of violence. Defendant's response was merely to try to obfuscate better the link between her threats and her victims in Texas. At some point, however, Defendant's relentless campaign of terror against the residents of Uvalde must stop; and no conditions of release will keep Defendant from accessing ubiquitous electronic devices that provide her access to social media. When she was a minor and living with her relatives, they could not prevent her from making threats. This is even more true now that Defendant is an adult.

During the local proceedings in Texas, Defendant was found to have above-average intelligence. She had lack of remorse or guilt and was diagnosed with opposition Defiant Disorder and Intermittent Explosive Disorder. She was found to be fully aware that making threats is wrong but believed that threats and violence will solve her problems. Back in 2019, an expert concluded that she was a danger to the community until she can understand that violence and killing people is not the way to settle problems when angry. Nothing seems to have changed in her thoughts and behavior since then. She continued making threats in 2020, 2021, 2022, and 2023. Per the contents of her social media page, she seems to be consuming marijuana while on psychiatric treatment. Thus, she may be mixing marijuana with prescription medication.

Most recently, she has communicated tens of threats over social media, websites, and email where she promises to shoot out schools, universities, hospitals, and public officials. In her threats, she promises to <u>hunt</u> students:

- *I will haunt everyone from class 2022 to 2023 Each and every single one of y'all will die…*

- *Imma kill more kids at the new school they're constructing*
- *imma shoot y'all new elementary school*
- *you'll see me when I put a bullet between your eyes*
- *I kill yall next year at uhs* [Uvalde High School]

These threats did not subside after the Robb Hill Elementary Massacre. Instead, she began using the event as an additional tool to project power to follow through and further terrorize her victims.

- *They wer meant to die" + "Lovely they diedI'm glad some of their blood runs in my hands Me and Salvador wanted to do this together but he don't wait for me to come Anyways more kids will die and teens so don't cry about this one cause there's worse coming…*
- *Me and Salvador Ramos planned this a long time ago Still he didn't wait for me But hey at least some of them kids runs in my hands I don't feel guilt at all.*
- *Im even thinking to do the same in my college*
- *We will shoot Uvalde Texas high school an Texas A&M college This shit will happen even if I die Ask Pete Arrendondo 4 days before sal going out crazy without me I called Pete and told him what was gonna happen But he insisted on telling me that I wasn't credible enough so I took the next step and told Salvador Salvador got mad and acted out So if y'all mfk don't do whatever I say All the citizens of Uvalde Texas will be slaughtered and killed on my name That's all folks*

Like in *Capriotti*, the "nature and circumstances of the offense, which, as charged, involved repeated, explicit threats to inflict injury and even death" require detention pending trial. *Id.* The

Court in *Capriotti* further explained that "the making of the threats themselves represent a harm to the community, so that without reasonable assurance that the threats themselves will stop upon release, the Court cannot issue a release order." *Id.*

> The Court's decision [to order Defendant detained] depended not on whether Defendant had any intent to carry out his threats The decision depended on the fact that the threats themselves were harmful. Threats, particularly those as explicit, graphic, and repeated as those alleged in this case, harm people. They terrorize people. They affect the safety, security and well-being of people. They induce fear.

*Id.* at *5.

Each time Rodriguez-Morales makes a threat, local authorities in Uvalde Texas must make the decision to mobilize resources and evacuate buildings or take the risk that something might happen. This is especially problematic considering that the community is still living with the trauma of the Robb Elementary massacre that she continues to reference in her threats.

## V. **Defendant poses a flight risk**

Defendant's conduct has been ongoing for years and has been impervious to local and federal law-enforcement intervention. The threats began when she was facing juvenile proceedings in Texas, while she was at a detention facility, and did not conclude when the proceedings were terminated on the condition that she relocate to Puerto Rico. That is, Defendant has a history of not complying with supervision.

She has exhibited an extreme degree of hostility against governmental functions and public officials. For example, back in 2020, when federal authorities in Puerto Rico began investigating her threats and visited her home, she began including threats to injure law enforcement officers that came to her house: "*yall better shut the fuck up before i leave yalls ass neckless next time they*

*come they will receive a bullet*" and if the FBI keeps coming she will kill them all. At least one of these threats was made using her mother's phone number.

Her parents have been made aware of her conduct. In fact, a meeting was held at the U.S. Attorney's office in June of 2022 to allow the parents the opportunity to address Defendant's conduct since, at the time, she was a juvenile. Her mother showed skepticism that her daughter had anything to do with the threats (some of which were made from the mother's phone) and claimed that Defendant had no access to electronic devices or social media. They communicated that Rodriguez-Morales was receiving mental health treatment and prescription medications. But the conduct continued through the use of borrowed phones (including from class mates). Hence, the parents have proven unable to control Defendant in the years since her release and the mental health treatment secured by the family has proven unsuccessful in stopping her conduct.

Now, Rodriguez-Morales reached adulthood, is attending college, and has a smartphone that she has used to continue making threats. Considering that the parents were unable to prevent her from further threats when she was underage and had no electronic devices, it seems unlikely that they will ensure she abides by court-imposed supervision now that she is an adult.

WHEREFORE, in view of the foregoing, the United States respectfully requests this Honorable Court to take notice of the foregoing, hold a detention hearing, and order defendant detained pending trial. *See Capriotti*, 2021 WL 229660, at *6 ("The threats as alleged in this case represent, in and of themselves, a distinct harm to the community. The Court is ordering Defendant's detention out of a concern that the risk to community safety stems from the risk that he will communicate more threats….").

RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, on November 28, 2023.

W. Stephen Muldrow
United States Attorney

/s/ Jeanette M. Collazo-Ortiz
Jeanette M. Collazo-Ortiz
Assistant U.S. Attorney
U.S.D.C./PR Bar 226803
Torre Chardon, Suite 1201
350 Carlos Chardon Avenue
San Juan, PR 00918
(787) 766-5656
Jeanette.collazo@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Jeanette M. Collazo-Ortiz
Jeanette M. Collazo-Ortiz